<div align="center">

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

</div>

DENISE JORDAN,

        Plaintiff,                 Case Number: 10-11833

v.                                        BERNARD A. FRIEDMAN
                                          UNITED STATES DISTRICT JUDGE

COMMISSIONER OF SOCIAL SECURITY,

                                          VIRGINIA M. MORGAN
        Defendant.          UNITED STATES MAGISTRATE JUDGE

_____ /

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 10) AND GRANT THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 13)**

      Plaintiff, Denise Jordan, appeals the Social Security Commissioner's unfavorable decision denying her disability benefits. This case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

**I. Background**

      Plaintiff applied for Supplemental Security Income Benefits ("SSI") and Disability Insurance Benefits ("DIB") on May 23, 2007, claiming disability as of December 1, 2006 due to "osteoporosis, high blood pressure, back problems, stress problems" and chronic pain. (Tr. 102-111, 123). Plaintiff has an eleventh-grade education and has experience as a cashier, cook, child care provider, and store manager. (Tr. 124). Plaintiff last worked on July 30, 2003 when the store where she was working closed. (Tr. 123). Plaintiff was thirty-nine years old when she applied for benefits and her

date last insured was September 30, 2007.  (Tr. 119).

Plaintiff's benefit applications were denied on September 13, 2007.  (Tr. 70-78).  Plaintiff filed a timely notice for a hearing.  (Tr. 25).  On August 24, 2009, Administrative Law Judge Patricia McKay  held a hearing at which Plaintiff was represented by counsel.  (Tr. 33).

On December 29, 2009, ALJ McKay issued a decision affirming the denial of Plaintiff's applications.  (Tr. 8).  The ALJ found that Plaintiff has the following severe impairments: "tenosynovitis of the right wrist; hypertension; and schizoaffective disorder, depressed type." (Tr. 13).  The ALJ did not find that Plaintiff had a severe impairment of back pain as there was no medical evidence of a diagnosis related to back pain.  (Tr. 13-14).  The ALJ also determined that Plaintiff's impairments were "severe" withing the meaning of 20 C.F.R. § 404.1520(a)(4)(ii) and § 416.920(a)(4)(ii), but that she did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations.  (Tr. 14-15).  The ALJ concluded that Plaintiff had the residual functional capacity to perform a significant range of light level work, with occasional crouching, crawling, kneeling, stooping/bending or climbing of ladders and/or stairs, which is routine and repetitive in nature, does not require sustained focus or concentration, is not closely supervised or involve production line work, and no more than occasional contact with co-workers or the general public, and that there is a significant number of jobs in the national economy that plaintiff can perform." (Tr. 16-19).  Accordingly, the ALJ found that Plaintiff was not "disabled" within the meaning of the Social Security Act.  (Tr. 20).

After receiving the ALJ's unfavorable decision, Plaintiff appealed to the Appeals Council but the Appeals Council denied her request for review.  (Tr. 1-4).  Subsequently, Plaintiff filed the instant complaint for judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

**II. Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *Brainard v. Secretary of HHS*, 889 F.2d 679, 681 (6th Cir. 1989); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in *Brainard*, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key*, 109 F.3d at 273.

**III. Analysis**

Plaintiff first argues that the ALJ failed to properly assess her fibromyalgia when she did not evaluate Plaintiff's symptoms under the Social Security rules and regulations. (Doc. No. 10, Pl.'s MSJ 11). Plaintiff asserts that the ALJ dismissed her fibromyalgia even though her treating rheumatologist found that she suffered from tenderness all over her body and had a positive rheumatoid factor consistent with fibromyalgia. *Id.* at 11-12. Therefore, Plaintiff alleges that the ALJ erred by failing to further inquire into her subjective complaints of pain and explaining why

Plaintiff's complaints of disabling pain are not credible. *Id.* at 12-13.

The Commissioner responds substantial evidence supports the ALJ's assessment of Plaintiff's fibromyalgia claim. (Doc. No. 13, Pl.'s MSJ 7). The Commissioner notes that Plaintiff did not submit records from her rheumatologist to the ALJ, the records were only submitted to the Appeals Council and, accordingly, cannot be considered by this court. *Id.* at 8. Further, the Commissioner argues that even if the records had been considered by the ALJ, the medical evidence as a whole does not support a finding of fibromyalgia because there is no evidence that Plaintiff had eleven painful trigger points; the medical evidence merely states that she has tenderness all over her body, which is insufficient to support a claim for fibromyalgia disability. *Id.* at 8. The Commissioner also argues that the ALJ "gave a robust explanation" as to why he found Plaintiff's testimony not fully credible, which was not limited to the lack of medical evidence. *Id.* at 9-10.

In discussing Plaintiff's severe impairments, the ALJ explained why she did not consider Plaintiff's alleged fibromyalgia to be a severe impairment:

> There is also an indication that the claimant was prescribed a cane in May 2008, well after her alleged onset date, for "fibromyalgia joint pain" (Exhibit l2F). Even though fibromyalgia is a medical condition not ordinarily established by laboratory findings alone, there are certain indicators that must be present in order to establish the existence of these conditions. For example, fibromyalgia requires the presence of a certain number of specific "tender" points upon specified pressure. The American College of Rheumatology established criteria in 1990 for the diagnosis of fibromyalgia. The criteria included widespread pain present for at least three months. Pain is considered widespread when a patient has pain in both sides of the body and has pain above and below the waist. There must be pain in 11 of 18 specified tender point sites upon digital palpation. To qualify, a tender point has to be painful at palpation, and not just "tender." F. Wolfe, et aI., Arthritis and Rheumatism, Vol. 33, No.2, Feb. 1990. None of the treating records document clinical findings of the specificity required to establish fibromyalgia as a severe impairment herein.

(Tr. 13).

With respect to Plaintiff's credibility, the ALJ found that:

4

> The claimant's hearing testimony was quite vague with regard to the assistance she allegedly receives from her mother and sister with the care of her child. Her hearing testimony was equivocal and lacked the specificity which would otherwise make it more convincing. When asked why she chose her alleged onset date of December 1, 2006 she indicated that it was when she was diagnosed with arthritis. However, there is no evidence of record to substantiate this testimony or correlate the alleged onset date with any particular diagnostic study. In fact, there is little or no objective medical evidence of record to substantiate any of the claimant's physical impairments whatsoever.
>
> The record contains one progress note from the Wayne State University Physicians Group dated September 10, 2008, nearly two years after the alleged onset date which notes the claimant to be in pain and very symptomatic with fibromyalgia. No prior or subsequent or corresponding treatment records were provided. Just this one page which notes the claimant to be virtually unable to do anything without help from her teenage daughter. The report also states that Vicodin controls the pain but contains physical examination findings inconsistent with disability. The claimant was noted to have full range of motion on the first two joints tested, but subsequent joint movement was limited due to pain. There was no peripheral edema, swelling or evidence of synovitis of any of the joints, but tenderness was noted in the muscles of the calves and arms (Exhibit 11F).

(Tr. 16-17).

The ALJ's decision to discount Plaintiff's claim that she suffers from fibromyalgia is supported by substantial evidence. The court first notes that the medical evidence Plaintiff relies on to support her argument that the ALJ erred in evaluating her claim of fibromyalgia was not provided to the ALJ. (Doc. No. 10, Pl.'s MSJ 11). Rather, pages 172-173 of the administrative record, which are medical records from Dr. Granda, her rheumatologist, from February and June 2008, and that stated she had multiple trigger points and a positive rheumatoid factor, were not provided to the ALJ. (Tr. 168). This court cannot consider evidence that was not considered by the ALJ, even if it was considered by the Appeals Council in its decision not to review Plaintiff's case. *See Cline v. Comm. of Soc. Sec.*, 96 F.3d 146, 149 (6th Cir. 1996).[1]

---

[1] Plaintiff has not moved for a remand pursuant to Sentence Six, nor does it appear to this court that such a remand would be warranted because the new evidence does not meet the

Without the medical records from the rheumatologist, Plaintiff's claim that she suffers from fibromyalgia is rather thin. Fibromyalgia is a medically determinable ailment and the existence of certain symptoms, particularly the presence of "trigger points," may support a diagnosis. *See Bartyzel v. Comm. Soc. Sec.*, 74 Fed. App. 515, 526 (6th Cir. 2003). Further, disability due to fibromyalgia may not be established solely on the claimant's statement of symptoms. *Id.* quoting SSR 99-2p. In this case, there is no medical evidence of a fibromyalgia diagnosis consistent with the American College of Rheumatology criteria for fibromyalgia. *See* SSR 99-2p n. 3. In addition, even if the ALJ found Plaintiff credible, Plaintiff's subjective complaints of pain is insufficient to establish that she suffers from fibromyalgia or that her fibromyalgia is a "severe impairment." Accordingly, the ALJ did not err by finding that Plaintiff's fibromyalgia was not a severe impairment.

Plaintiff next argues that the ALJ did not give controlling weight to Plaintiff's treating physician. (Doc. No. 10, Pl.'s MSJ 13). Plaintiff contends that the ALJ rejected Dr. Granda's opinion that she suffers from fibromyalgia without explanation or comment. *Id.* at 14. Plaintiff further argues that the ALJ did not afford any weigh to Dr. Lachover's opinion either. *Id.* at 14.

The Commissioner responds that Dr. Granda's opinion was not considered by the ALJ because it was not submitted to the ALJ. (Doc. No. 13, Pl.'s MSJ 8 n. 4). In addition, the Commissioner argues that the ALJ properly refused to give Dr. Lachover's opinion controlling weight because Dr. Lachover was not capable of presenting a longitudinal picture of Plaintiff's impairments and, as a result, should not be considered to be a treating source. *Id.* at 16.

The ALJ did not err by not giving Dr. Granda's opinion controlling weight. The ALJ could

---

diagnostic criteria for a fibromyalgia diagnosis.


not have given Dr. Granda's opinion that Plaintiff has multiple trigger points and suffers from fibromyalgia because, as discussed above, the medical records in which Dr. Granda makes that diagnosis were not submitted to the ALJ. (Tr. 172-173). Accordingly, the ALJ cannot be faulted for failing to give controlling weight to evidence she did not receive.

Moreover, the ALJ did not err by failing to accord Dr. Lachover's opinion controlling weight. The ALJ made the following findings about Dr. Lachover's opinion:

> Opinion evidence provided by treating mental health care providers have been afforded little weight as they were issued shortly after initial evaluation and there is insufficient treating documentation to substantiate the opinions. For example, an FIA Psychiatric/psychological Examination Report Form was completed on April 4, 2008 by Leonard Lachover, M.D. Dr. Lachover noted the claimant to need assistance with showering, dressing and other activities. However, she was also noted to be goal directed and oriented in her speech, despite being tearful on interview. A diagnosis of schizoaffective disorder was indicated with a global assessment of functioning (GAF) score of 45 indicated. The claimant was first seen by the doctor completing
> the form on March 5, 2008 (Exhibit 8F).
> Counsel argues that the GAF scores identified in the record are indicative of disability. Although scores of 45 to 50 are generally said to evidence serious symptoms, it must be noted that despite their numeric appearance GAF scores are not an objective form of evidence. They are subjective opinions, representing a snapshot of a person's level of functioning at a given moment in time, not a rating of their ability to work.
> Dr. Lachover also completed a medical source statement concerning the claimant's mental ability to do work related activities. The form dated on month later on May 2, 2008, notes the claimant to have either "marked" limitations, defined as a substantial loss of ability to function, or "extreme" limitations, defined as no useful ability to function, in all areas of functioning (Exhibit lOF). Although a treating source's statement regarding disability is an issue reserved to the Commissioner (20 CFR 416.927(e)(l)), such a statement may be used to show the severity of the claimant's symptoms and their effect on the ability to work (20 CFR 404. 15 13(b)). However, in order to be afforded any significant weight by an Administrative Law Judge, such statements must have support from corresponding treatment records.

(Tr. 18).

Under the Social Security regulations, when a treating physician submits a medical opinion,

the ALJ must either defer to the opinion or provide "good reason" for refusing to defer to the opinion. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, in order to be considered a treating source, the medical provider must have seen the claimant "a number of times" and for "long enough to have obtained a longitudinal picture" of the claimant's impairment. *See* 20 C.F.R. § 404.1527(d)(2)(i) ("When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.")

The ALJ properly discounted Dr. Lachover's opinion because he saw Plaintiff very few times and the medical documentation of his treatment of her is sparse. The medical records show that Dr. Lachover saw Plaintiff in March and May of 2008, although he continued to prescribe her antipsychotics for months afterwards. (Tr. 231-237). However, the records provided do not support a finding that Dr. Lachover was a treating source: there are no records showing that he treated Plaintiff a number of times over a long period. The ALJ relied on the sparse records and few examinations by Dr. Lachover to discount his opinion and give it less than controlling weight. In addition, the ALJ gave good reasons for discounting Dr. Lachover's opinion. Given the lack of treatment records, the ALJ did not err by not giving Dr. Lachover's opinion controlling weight.

Plaintiff's third and final argument is that the ALJ's residual functional capacity assessment did not accurately portray her physical and mental impairments and the substantial treatment of both. (Doc. No. 10, Pl.'s MSJ 15). Plaintiff complains that ALJ McKay did not factor her schizoaffective disorder, her moderate difficulties with daily activities, social functioning, or moderate difficulty maintaining concentration, persistence, and pace, or her frequency of medical treatment. *Id*. Plaintiff also argues that ALJ McKay should have considered the stress level of a particular job,

nonexertional parameters, and her physical impairments including tenosynovitis of the right wrist and hypertension. *Id.* at 16-17.

The Commissioner responds that the ALJ properly translated Plaintiff's mental impairment into work-related limitations for the vocational expert to evaluate, even though the ALJ did not specifically use the term "schizoaffective disorder." (Doc. No. 13, Def.'s MSJ 18). The Commissioner also argues that the ALJ incorporated a number of restrictions to accommodate Plaintiff's difficulties with concentration, persistence, pace, and stress. *Id.* at 18-19. The Commissioner further argues that Plaintiff's claim that she needed to be able to leave work for doctor's appointments is without merit because the treatment records indicate that her medical treatment was infrequent at best. *Id*. at 19.

Contrary to Plaintiff's assertions, the ALJ incorporated all of the work restrictions supported by substantial evidence in the record into her residual functional capacity assessment. The court notes that the ALJ thoroughly discussed the evidence that she relied on and discounted in making her findings on Plaintiff's residual functional capacity. (Tr. 16-18). Further, the ALJ added a number of restrictions that limited RFC to jobs that are not high stress and do not involve a high level of exertion. The ALJ limited Plaintiff to light work that involves occasional crouching, crawling, kneeling, stooping/bending or climbing of ladders and/or stairs, is routine and repetitive, does not require sustained focus or concentration, is not closely supervised, does not involve production line work and involves no more than occasional contact with co-workers or the general public. (Tr. 16). Also, the ALJ did not err by failing to consider the frequency of Plaintiff's medical treatment because, as discussed above, her treatment was infrequent. Because the ALJ incorporated all of Plaintiff's limitations supported by substantial evidence in the record, the ALJ did not err in

her assessment of Plaintiff's residual functional capacity.

## IV. Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that Plaintiff's motion for remand be **DENIED**, and that Plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless,

by motion and order, the page limit is extended by the court.  The response shall address  each issue contained within the objections specifically and in the same order raised.


                                       S/Virginia M. Morgan
                                       Virginia M. Morgan
                                       United States Magistrate Judge

Dated: January 14, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 14, 2011.

                                       s/Jane Johnson
                                       Case Manager to
                                       Magistrate Judge Virginia M. Morgan